**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of Texas
(State)

Case number *(if known)*: _____     Chapter ___11___

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| **1. Debtor's Name** | Carlson Travel, Inc. | |
| **2. All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | N/A | |
| **3. Debtor's federal Employer Identification Number** (EIN) | 81-4531146 | |

**4. Debtor's address**

**Principal place of business**

701 Carlson Parkway
Number        Street

Minnetonka        Minnesota  55305
City                    State      Zip Code

Hennepin County
County

**Mailing address, if different from principal place of business**

Number             Street

P.O. Box

City                    State      Zip Code

**Location of principal assets, if different from principal place of business**

Number             Street

City                    State      Zip Code

**5. Debtor's website** (URL)    https://www.mycwt.com/

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

| Debtor | Carlson Travel, Inc. | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**5615 (Travel Arrangement and Reservation Services)**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1). Its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000 **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☒ A plan is being filed with this petition.

    ☒ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form**.**

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes.

| | District | | When | | Case number | |
|---|---|---|---|---|---|---|
| | | _____ | When | _____ | Case number | _____ |
| | | | | MM/DD/YYYY | | |
| | District | _____ | When | _____ | Case number | _____ |
| | | | | MM/DD/YYYY | | |

Debtor   Carlson Travel, Inc.                                     Case number (if known) _____
_____Name_____

_____

| | | | | |
|---|---|---|---|---|
| **10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?** | ☐ No<br>☒ Yes. | Debtor | **See Rider 1** | Relationship  **Affiliate** |
| List all cases. If more than 1, attach a separate list. | | District | **Southern District of Texas** | When  **11/11/2021**<br>MM / DD / YYYY |
| | | Case number, if known | _____ | |

| | |
|---|---|
| **11. Why is the case filed in _this_ district?** | _Check all that apply:_<br><br>☐  Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.<br><br>☒  A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district. |

| | |
|---|---|
| **12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?** | ☒ No<br>☐ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.<br><br>**Why does the property need immediate attention?** (_Check all that apply._)<br><br>☐  It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.<br><br>    What is the hazard? _____<br><br>☐  It needs to be physically secured or protected from the weather.<br><br>☐  It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).<br><br>☐  Other _____<br><br>**Where is the property?** _____<br>                              Number      Street<br>                              _____<br>                              City                    State   Zip Code<br><br>**Is the property insured?**<br><br>☐ No<br>☐ Yes.   Insurance agency _____<br>            Contact name  _____<br>            Phone  _____ |

| **Statistical and administrative information** |
|---|

| | |
|---|---|
| **13. Debtor's estimation of available funds** | _Check one:_<br><br>☒  Funds will be available for distribution to unsecured creditors.<br>☐  After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. |

| **14. Estimated number of creditors** | ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
|---|---|---|---|
| | ☐ 50-99 | ☒ 5,001-10,000 | ☐ 50,001-100,000 |
| | ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| | ☐ 200-999 | | |

| **15. Estimated assets** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| Debtor | Carlson Travel, Inc. | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☒ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

---

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    __11/11/2021__
               MM/ DD / YYYY

✗    __/s/ Michelle McKinney Frymire__        __Michelle McKinney Frymire__
      Signature of authorized representative of debtor      Printed name

Title    __President and Chief Executive Officer__

**18. Signature of attorney**

✗    __/s/ Matthew D. Cavenaugh__      Date    __11/11/2021__
      Signature of attorney for debtor           MM/DD/YYYY

__Matthew D. Cavenaugh__
Printed name

__Jackson Walker LLP__
Firm name

__1401 McKinney Street, Suite 1900__
Number             Street

__Houston__            __Texas__      __77010__
City                 State       ZIP Code

__(713) 752-4200__           __mcavenaugh@jw.com__
Contact phone             Email address

__24062656__           __Texas__
Bar number            State

---

<table>
<tr><td colspan="2" style="background:black;color:white">**Fill in this information to identify the case:**</td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the:<br><br>                       Southern District of Texas<br>                             (State)</td></tr>
<tr><td>Case number (if known): _____</td><td>Chapter ___11___</td></tr>
</table>

☐ Check if this is an
amended filing

### Rider 1
### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code.  The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Carlson Travel, Inc.

| | |
|---|---|
| Carlson Travel, Inc. | 152812 Canada Inc. |
| Carlson Travel Holdings, Inc. | Carlson Wagonlit eCenter Polska sp. z o.o. |
| CCI Travel Coöperatief U.A. | CW Travel Canada, Ltd. |
| CWT B.V. | CWT Beheermaatschappij B.V. |
| CWT Belgium Srl | CWT Canada |
| CWT Diemen B.V. | CWT Finland Holdings Oy |
| CWT Finland Oy | CWT France SAS |
| CWT Global B.V. | CWT Global España S.L.U. |
| CWT Holdco Limited | CWT International SA |
| CWT Ireland Limited | CWT Italia S.R.L. |
| CWT Lux Holding I SARL | CWT Lux Holding II SARL |
| CWT Meetings & Events Ireland Limited | CWT MEO SAS |
| CWT Nederland B.V. | CWT New Holdco Ltd |
| CWT Polska sp. z o.o. | CWT SAS |
| CWT Spain Holdings I B.V. | CWT Travel B.V. |
| CWT Travel Services Global España S.L.U. | CWT UK Group Ltd |
| CWT US Holding I, LLC | CWT US Holding II, LLC |
| CWT US, LLC | Harrin Limited |
| SapoToro B.V. | WorldMate, LLC |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CARLSON TRAVEL, INC., | ) ) | Case No. 21-_____(____) |
| Debtor. | ) ) ) | |

**LIST OF EQUITY SECURITY HOLDERS**[1]

| Debtor | Equity Holders | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|---|
| Carlson Travel, Inc. | Carlson Travel Investments, Inc. | 701 Carlson Parkway Minnetonka, MN 55305 | 100% |

---

[1]   This list serves as the disclosure required to be made by the debtor pursuant to rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CARLSON TRAVEL, INC., | ) Case No. 21-_____(____) |
| | ) |
| Debtor. | ) |
| | ) |

<u>**CORPORATE OWNERSHIP STATEMENT**</u>

      Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Carlson Travel Investments, Inc. | 100% |

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | Carlson Travel, Inc. |
| United States Bankruptcy Court for the: | Southern District of Texas |
| | (State) |
| Case number (If known): | |

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐  *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐  *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐  *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐  *Schedule H: Codebtors (Official Form 206H)*

☐  *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐  Amended Schedule

☒  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒  Other document that requires a declaration_____**List of Equity Security Holders and Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on

| | |
|---|---|
| **11/11/2021** | ☒ */s/ Michelle McKinney Frymire* |
| MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | **Michelle McKinney Frymire** |
| | Printed name |
| | **President and Chief Executive Officer** |
| | Position or relationship to debtor |

**Official Form 202**                    **Declaration Under Penalty of Perjury for Non-Individual Debtors**

**Fill in this information to identify the case:**

Debtor name      Carlson Travel, Inc., *et al.*

United States Bankruptcy Court for the:                    Southern      District of      Texas
                                                                                    (State)

Case number (If known):      _____

☐ Check if this is an
   amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.**

| Name of creditor and complete mailing address, including zip code[1] | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1  2025 USD Senior Secured Notes c/o U.S. Bank Trustees Limited 125 Old Broad Street; Fifth Floor London  EC2N 1AR United Kingdom | Attention: Structured Finance Relationship Management f: +44(0) 207 330 2156 e:mbs.relationship.management @usbank.com | Debt | Unliquidated | $436,099,030 | Undetermined | $436,099,030 |
| 2  2025 Euro Senior Secured Notes c/o U.S. Bank Trustees Limited 125 Old Broad Street; Fifth Floor London  EC2N 1AR United Kingdom | Attention: Structured Finance Relationship Management f: +44(0) 207 330 2156 e:mbs.relationship.management @usbank.com | Debt | Unliquidated | $388,365,200 | Undetermined | $388,365,200 |
| 3  2026 Senior Notes c/o U.S. Bank Trustees Limited 125 Old Broad Street; Fifth Floor London  EC2N 1AR United Kingdom | Attention: Structured Finance Relationship Management f: +44(0) 207 330 2156 e:mbs.relationship.management @usbank.com | Debt | Unliquidated | $0 | $0 | $277,782,943 |
| 4  0.50% Senior Subordinated Euro Notes due 2027 c/o U.S. Bank Trustees Limited 125 Old Broad Street; Fifth Floor London  EC2N 1AR United Kingdom | Attention: Structured Finance Relationship Management f: +44(0) 207 330 2156 e:mbs.relationship.management @usbank.com | Debt | Unliquidated | $0 | $0 | $5,784,140 |
| 5  BNP Montagne Du Parc 8 1 KAIJ Brussels  1000 Belgium | Sebastien DeRenne p: +32 (0) 2 312 7082 e:sebastien.derenne@bnppariba s.com | Trade Supplier | | $0 | $0 | $5,033,216 |

(1)   Certain creditors who are owed amounts in accordance with the Debtors' deferred compensation plan and otherwise would have met the criteria to be included in the list of creditors holding the largest 30 unsecured claims have been omitted due to safety and privacy concerns

Debtor   Carlson Travel, Inc., *et al.*                                   Case number *(if known)*_____
         Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 6 | 0.50% Senior Subordinated USD Notes due 2027 c/o U.S. Bank Trustees Limited 125 Old Broad Street; Fifth Floor London  EC2N 1AR United Kingdom | Attention: Structured Finance Relationship Management f: +44(0) 207 330 2156 e:mbs.relationship.management @usbank.com | Debt | Unliquidated | $0 | $0 | $4,050,332 |
| 7 | CDS 187 bureau de la Colline Saint Cloud  92210 France | Alain de Labaca p: +33 (0)1 74 71 49 60 e: adelabaca@cdsgroupe.com | Trade Supplier | | $0 | $0 | $2,725,509 |
| 8 | Pegasystems Inc. Attn: General Counsel One Rogers Street Cambridge, MA  02142-1590 | Scott Downer p: 617-498-8808 e: Scott.Downer@pega.com | Operational Vendor | | $0 | $0 | $1,232,640 |
| 9 | Oracle Attention: General Counsel, Legal Department 500 Oracle Parkway Redwood Shores, CA  94065 | John Brooke p: 415-519-5950 e: john.brooke@oracle.com | Operational Vendor | | $0 | $0 | $1,181,757 |
| 10 | Barclays CC 1234 Pavillion Drive Northampton  NN4 7SG United Kingdom | Danielle Waugh p: +44 (0)7867 352 815 e:Danielle.Waugh@barclaycard.c o.uk | Trade Supplier | | $0 | $0 | $1,181,068 |
| 11 | Ahead, Inc Attn. Legal 401 N Michigan Ave Suite 3400 Chicago, IL  60611 | Dan Flood p: 612-644-7915 e: legal@thinkahead.com; dan.flood@ahead.com | Operational Vendor | | $0 | $0 | $1,126,866 |
| 12 | US Premium Finance 280 Technology Pkwy; Suite 200 Norcross, GA  30092 | Michael Preston p: 866-246-9691 f: 866-246-9692 | Operational Vendor | | $0 | $0 | $1,107,978 |
| 13 | HERTZ Hertz House 11 Vine St Uxbridge  UB8 1QE United Kingdom | Bernadett Kada Director of Travel Industry Sales EMEA p: +49 6196 937 399 e: bkada@hertz.com | Trade Supplier | | $0 | $0 | $930,528 |
| 14 | AIR PARTNER PLC 2 City Place Beehive Ring Road Gatwick  RH6 0PA United Kingdom | Clive Chalmers p: +44 1293 844864 e:Clive.Chalmers@airpartner.co m | Trade Supplier | | $0 | $0 | $810,015 |
| 15 | Avis Budget Group Avis Budget House Park Road Bracknell  RG12 2EW United Kingdom | Jeanette Harper Senior Director, International Travel & Partnerships Avis Budget EMEA Ltd p: +44 7786 982624 e: Jeanette.Harper@abg.com | Trade Supplier | | $0 | $0 | $760,850 |
| 16 | THALYS INTERNATIONAL Place Marcel Broodthaers 4 BRUXELLES  1060 Belgium | Houda Draouil p: +32 2 435 77 32 e: hod@thalys.com | Trade Supplier | | $0 | $0 | $614,685 |

Debtor _____Carlson Travel, Inc., *et al.*_____     Case Number (*if known*) _____
               Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 17 | IHG INTERCONTINENTAL HOTELS 3 Ravinia Drive Suite 100 Atlanta, GA  30346 | Melissa Shainman p: +1 (480) 255-6273 e: melissa.shainman@ihg.com | Trade Supplier | | $0 | $0 | $590,517 |
| 18 | CONCUR TECHNOLOGIES INC 601 108th Ave NE, Suite 1000 Bellevue, WA  98004 | Denise Kelley p: 443-341-7484 e: denise.kelley@sap.com | Trade Supplier | | $0 | $0 | $470,580 |
| 19 | OPCO MOBILITES 204 Rond-Point du Pont de Sèvres Boulogne-Billancourt  92649 France | Bernard CHAUMAT p: +33 06 71 09 75 48 e:bernard.chaumat@opcomobilit es.fr | Operational Vendor | | $0 | $0 | $467,078 |
| 20 | THE TRAVEL BIRDS 4 FURSTENALLEE SALZBURG  5020 Austria | Birgit Fuchs p: +43 662 243192-40 e: weare@thetravelbirds.at | Trade Supplier | | $0 | $0 | $404,110 |
| 21 | Software House International Attn: Contracts Dept 290 Davidson Ave Somerset, NJ  08873 | Steve Young p: 319-430-5184 e: steve_young@shi.com | Operational Vendor | | $0 | $0 | $361,364 |
| 22 | MTS TOURISM SOLUTIONS SA 35, KAPNIKAREAS ST. Athens  10556 Greece | VENIERI ELENI p: +30 210 3379000 e:eleni.venieri@mtscitybreaks.eu | Trade Supplier | | $0 | $0 | $360,422 |
| 23 | Insight Technology Solutions Attn: Legal Department 6820 S Harl Ave Tempe, AZ  85283 | Steve Schmitz p: 952-279-5923 e: Steve.Schmitz@insight.com | Operational Vendor | | $0 | $0 | $321,141 |
| 24 | EUROPCAR 13 ter boulevard Berthier Paris  75017 FRANCE | Stephane Engels p: +33 1 73 13 74 61 e:stephane.engels@europcar.co m | Trade Supplier | | $0 | $0 | $312,912 |
| 25 | Travel Centric Technology (TCT - dba Hotel Hub) 337 Bath Road Slough, Berkshire  SL1 5PR United Kingdom | Eric Meierhans p: 33 950 51 86 35 e: notices@tctmail.com; eric.meierhans@hotelhub.com | Operational Vendor | | $0 | $0 | $296,690 |
| 26 | Microsoft One Microsoft Way Redmond, WA  98052 | Kent Smith p: 952-806-4223 e: Kent.Smith@microsoft.com | Operational Vendor | | $0 | $0 | $275,715 |
| 27 | AMADEUS Salvador de Madariaga 1 Madrid  28027 Spain | Paul de Villiers p: +34 91 177 2169 e: paul.devilliers@amadeus.com | Trade Supplier | | $0 | $0 | $264,562 |
| 28 | MONDIAL GMBH & CO. KG Operngasse 20B Wien  1040 Austria | Stefan Walter p: +43 1 58804 188 e: walter@mondial-congress.com | Trade Supplier | | $0 | $0 | $261,346 |

Debtor _____ Carlson Travel, Inc., *et al.*_____     Case Number (*if known*) _____
                 Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 29 | SIXT Sixt GmbH & Co Autovermietung KG Zugspitzstrasse 1 Pullach  82049 Germany | Anne Sophie Wuthrich Director of Travel Sales International p: +33 6 33 84 57 57 e: anne-sophie.wuthrich@sixt.com | Trade Supplier | | $0 | $0 | $225,101 |
| 30 | GESTAIR 11 3B C/ANABEL SEGURA ALCOBENDAS  28108 SPAIN | Roger Sola Caballero e: rsola@gestair.com | Trade Supplier | | $0 | $0 | $164,040 |

SECRETARY'S CERTIFICATE
OF
CARLSON TRAVEL, INC.

November 10, 2021

The undersigned, Lauren Aste, hereby certifies that she is the duly elected, qualified, and acting Executive Vice President, Chief Legal Officer, and Secretary of Carlson Travel, Inc., a Minnesota corporation (the "**Company**"), and that, as such, she is duly authorized to execute and deliver this Secretary's Certificate on behalf of the Company. The undersigned further certifies, in her capacity on behalf of the Company and not in any individual capacity, as follows:

1. I am the duly qualified and appointed Secretary of the Company.

2. Attached hereto as <u>Annex A</u> is a true and complete copy of the resolution (the "**Resolution**") duly adopted by the restructuring committee of the board of directors of the Company, acting pursuant to the Company's bylaws (as amended, amended and restated, modified, supplemented, or replaced from time to time, "**Bylaws**").

3. The Resolution is not inconsistent with the Bylaws.

4. The Resolution has not been amended, modified, repealed, or rescinded since adopted, and is in full force and effect on and as of the date hereof.

*[Signature page follows]*

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the date first written above.

/s/ Lauren Aste
Name:  Lauren Aste
Title:   Executive Vice President, Chief
         Legal Officer, and Secretary

Annex A

# RESOLUTIONS OF THE RESTRUCTURING COMMITTEE OF CARLSON TRAVEL, INC.
## November 10, 2021

**WHEREAS**, a telephonic meeting of the independent directors (the **Directors**), constituting all the members of the restructuring committee (the **Restructuring Committee**) of Carlson Travel, Inc., a Minnesota corporation (the **Company**), was conducted on November 10, 2021;

**WHEREAS**, the Directors reviewed and considered the materials presented by the Company's management (**Management**) and the financial and legal advisors of the Company (collectively, the **Advisors**), including, but not limited to, materials regarding the liabilities and liquidity situation of the Company and its subsidiaries (the **Group**), the strategic alternatives available to it, and the effect of the foregoing on the Company's business;

**WHEREAS**, the Directors had the opportunity to consult with Management and the Advisors of the Company and fully consider each of the strategic alternatives available to the Company and the Group, and the effect of the foregoing on the Company's and the Group's business;

**WHEREAS**, the Company negotiated and executed a restructuring support agreement, dated September 10, 2021, as amended and restated on September 22, 2021, with , among others, the Company and certain holders of the New Secured Notes, the New Third Lien Notes, the Priority Notes and the lenders under the Revolving Credit Facilities Agreement (the **RSA**), which agreement contemplates a comprehensive restructuring of the Company's and the Group's capital structure on the terms set forth therein;

**WHEREAS**, the RSA contemplates, among other things, issuance of $625 million in aggregate principal amount of 8.50% senior secured notes due 2026 (the **Exit First Lien Notes** and the indenture and other documents related thereto, the **Exit First Lien Notes Documents**);

**WHEREAS**, the RSA provides, among other things, the Company with consensual access to cash collateral, as that term is defined in section 363 (a) of the Bankruptcy Code (**Cash Collateral**) on the terms and conditions set forth therein, including the incurrence of certain specified adequate protection obligations (the **Adequate Protection Obligations**);

**WHEREAS**, in connection with the RSA the Company negotiated consensual access to cash collateral, as that term is defined in section 363 (a) of the Bankruptcy Code (**Cash Collateral**) on the terms and conditions set forth in the RSA;

**WHEREAS**, in connection with the RSA, certain RSA parties committed to fully backstop a debt rights offering for $500 million of the Exit First Lien Notes (the **Debt Rights Offering**);

**WHEREAS**, in connection with the RSA, the Company and certain RSA parties negotiated and executed a backstop commitment agreement, dated as of September 17, 2021, in the form or substantially in the form submitted to and approved

by the Directors on September 10, 2021 (the ***Backstop Commitment Agreement***), which authorizes the Company to issue new common stock for purchase pursuant to an equity rights offering (the ***Equity Rights Offering***, and, together with the Debt Rights Offering, the ***Rights Offerings***) on the terms set forth therein;

WHEREAS, the Company executed a plan of reorganization (the ***Plan***) consistent with the terms of the RSA and launched solicitation thereof in accordance with the RSA and pursuant to sections 1125 and 1126 of title 11 of the United States Code (the ***Bankruptcy Code***) on October 1, 2021;

WHEREAS, the Company launched the Rights Offerings on October 4, 2021;

WHEREAS, the Company and JPMorgan Chase Bank, N.A. executed a binding commitment letter (the ***Exit Financing Facility Commitment Letter***) that contemplates entry into a first-out first lien exit facility in an aggregate principal amount of up to $150,000,000 comprised of (i) a first lien term loan facility in an aggregate principal amount of up to $90,000,000 and (ii) a first lien revolving credit facility in an aggregate principal amount of up to $60,000,000 (the ***Exit Financing Facility***, the credit agreement in connection therewith, the ***Exit Facility Credit Agreement***, and, together with all other documents necessary or desirable to effectuate the same, the ***Exit Facility Financing Documents***, and, collectively with the Exit First Lien Notes Documents, the ***Exit Finance Documents***), substantially on the terms and conditions set forth therein including in respect of the security and guarantee package to be provided to the lenders in respect of the Exit Financing Facility and the noteholders in respect of the Exit First Lien Notes;

WHEREAS, the Company and the Group will obtain benefits from the use of Cash Collateral, which is security for certain prepetition secured lenders (collectively, the ***Secured Lenders***), certain of which are parties to the RSA;

WHEREAS. in connection with consummation of the Plan and the transactions contemplated thereby, including those transactions set forth in the Restructuring Transactions Memorandum attached hereto as **Exhibit A** (the ***Restructuring Transactions***), the Company has, or intends to enter into or accede to transactions documents necessary to carry out the Restructuring Transactions (the ***Transaction Documents***);

WHEREAS, after careful consideration the Directors determined that the Company's incurrence of the Adequate Protection Obligations and entry into the Exit Financing Documents is advisable and in the best interests of the Company and the Group, their stakeholders, their creditors, and other parties in interest; and

WHEREAS, the electronic signature of any Authorized Officer may be used for the purpose of signing any Transaction Document in the Company's name;

WHEREAS, the Restructuring Committee has carefully considered the Restructuring Transactions and the material terms of the forms or drafts of the Transaction Documents;

**WHEREAS**, the Restructuring Committee noted that the COVID-19 outbreak is still adversely affecting the Company's business and results of operations, and the Company's business operations could be disrupted by future health epidemics. Accordingly, the Restructuring Committee carefully considered the effect of the proposed transactions on the Company and, in particular, on the interests of the Company's creditors and concluded that entering into the proposed transactions would benefit the Company and be in the interests of the creditors, its members and other stakeholders and conducive to the attainment of its strategic objectives and in furtherance of its business to authorise the Company to:

 i. file, or cause to be filed, a voluntary petition for relief (the ***Chapter 11 Case***) under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the ***Bankruptcy Code***) in the United States Bankruptcy Court for the Southern District of Texas (the ***Bankruptcy Court***) or other court of competent jurisdiction, and any other petition for relief or recognition or other order that may be desirable under applicable law of the United States;

 ii. execute, deliver and perform the obligations set out in the Transaction Documents and the documents contemplated by the Restructuring Transaction (including the Exit Finance Documents and the borrowings, guarantees and provision of security in connection therewith) to which the Company is or will be a party;

 iii. access the use of Cash Collateral and, in connection with the consensual use of Cash Collateral, grant the Adequate Protection Obligations and obtain entry of the Cash Collateral Order by the Bankruptcy Court; and

 iv. retain professionals in connection with the filing of the Chapter 11 Case, and

the following resolutions are advisable and in the best interests of the Company, its creditors, its members and other stakeholders;

**WHEREAS**, the Restructuring Transactions and the execution, delivery and performance of the Transaction Documents (including the incurrence of indebtedness and guarantees thereunder) are in the best interests of the Company and within the scope of its corporate power and authority;

**WHEREAS**, the terms of the Transaction Documents are bona fide arm's length commercial terms and the Restructuring Transactions are entered into by the Company for bona fide commercial reasons;

**WHEREAS**, the Company intends to use the proceeds from the Exit Financing Facility and the issuance of the Exit First Lien Notes, directly or indirectly, (i) to fund the fees and expenses incurred in connection with the Restructuring Transactions, (ii) to fund distributions under the Plan, and (iii) for additional liquidity, working capital and general corporate purposes including the entry by the Company and certain of its subsidiaries and affiliates into the Transaction Documents; and

**WHEREAS**, following discussion, upon a motion duly made and seconded, the Directors unanimously adopted and executed the following resolutions.

**IT IS PROPOSED THAT:**

a. the Company:

    i. commences the Chapter 11 Case and the filing of all documentation commencing and effecting the Chapter 11 Case to be filed with the Bankruptcy Court;

    ii. authorize the Company to use Cash Collateral and, in connection with the consensual use of Cash Collateral, the granting of the Adequate Protection Obligations and the entry of the Cash Collateral Order by the Bankruptcy Court; and

    iii. retain professionals in connection with the filing of the Chapter 11 Case; and

b. the Company enters into certain Transaction Documents as described above.

**HEREBY RESOLVE THAT:**

*Chapter 11 Filing*

a. in the business judgment of the Restructuring Committee, it is desirable and in the best interests of the Company, its stakeholders, its creditors, and other parties in interest that any Authorized Signatory shall be, with power of delegation, authorized, empowered, and directed to:

    i. file, or cause to be filed, the Chapter 11 Case under the Bankruptcy Code in the Bankruptcy Court and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States; and

    ii. file or cause to be filed the Plan, the Disclosure Statement, and all other papers or documents (including any amendments) related thereto;

b. any Authorized Signatory shall be, and hereby is authorized, empowered, and directed, together with the financial and legal advisors of the Company, to:

    i. file or cause to be filed (x) the voluntary petition to commence the Chapter 11 Cases and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States and (y) the Plan, the Disclosure Statement, the Cash Collateral Order and all other papers or documents (including any amendments) related thereto with the Bankruptcy Court; and

    ii. to take any and all actions and execute, acknowledge, deliver, and file all other documents deemed necessary or advisable to confirm and, if confirmed by the Bankruptcy Court, consummate a plan of reorganisation materially consistent with the Plan, including, but not limited to, any amendments to, and modifications of, the Plan and the Disclosure Statement;

c. any Authorized Signatory be, and hereby is with power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules,

motions, lists, applications, pleadings, and other papers and, in connection with the Chapter 11 Case, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that any Authorized Signatory deem necessary, proper, or desirable in connection with the Chapter 11 Case, with a view to the successful prosecution of such case, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's business;

*Documents*

    d. it being in the best interests of the Company, its stakeholders, its creditors and other parties in interest and most likely to promote the success of the Company:

        i. the ongoing negotiation (where applicable), execution, delivery, filing and/or performance by the Company, in good faith, of the Transaction Documents and the documents contemplated by the Restructuring Transaction be and is hereby approved;

        ii. the provision by the Company of the guarantees and the security under the Exit Financing Facility and the Exit First Lien Notes be and hereby is approved;

        iii. if not available to be tabled as at the date of this resolution, any document effecting the Exit Financing Facility and/or the Exit First Lien Notes be approved provided that the form of such document will be, in all respects, substantially consistent with the Exit Financing Commitment Letter and the RSA; and

        iv. the terms of and the transactions contemplated by the Transaction Documents and the Restructuring Transaction be approved in the form provided to the directors for consideration, subject to such amendments as any Director or any Authorized Signatory may in his/her absolute discretion approve;

    e. any Director or any Authorized Signatory (or, in relation to any of the Transaction Documents required to be executed as a deed, any two Authorized Signatories, or any one Authorized Signatory in the presence of a witness who attests their signature) be authorized and instructed to execute the Transaction Documents and the documents contemplated by the Restructuring Transaction on behalf of the Company;

    f. any Authorized Signatory (or, in the case of a document to be executed as a deed, any Authorized Signatories or any one Authorized Signatory in the presence of a witness who attests their signature) be authorized to negotiate, approve and execute on behalf of the Company such documents and deeds as he/she or they (as the case may be) in his/her or their absolute discretion consider ancillary or incidental to, or necessary or desirable to give effect to the Transaction Documents or in connection with the transaction contemplated by the Transaction Documents and the Restructuring Transaction;

    g. any one or more Authorized Signatories each be authorized to do or procure to be done all acts or things of whatever nature which may, in such person's

opinion, be necessary, desirable or expedient in connection with the Restructuring Transaction, the transactions contemplated by the Transaction Documents and the documents contemplated by the Restructuring Transaction, including (without limitation) signing, acknowledging, filing and/or despatching any notices, certificates, instruments, motions, papers and any other document (including any utilisation request or selection notice referred to in the Exit Facility Credit Agreement or as required for the perfection of any security interest) on behalf of the Company and any other documents relating thereto;

*Cash Collateral and Adequate Protection*

h.  the Company will obtain benefits from the use of the Cash Collateral;

i.  in order to use and obtain the benefits of the Cash Collateral, in accordance with section 363 of the Bankruptcy Code, the Company will provide the Adequate Protection Obligations (as documented in the Cash Collateral Order and submitted for approval to the Bankruptcy Court);

j.  the form, terms, and provisions of the Cash Collateral Order to which the Company is or will be subject, and the actions and transactions contemplated thereby be, and hereby are authorized, adopted, and approved, and any Authorized Signatory be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the Cash Collateral Order and such other agreements, certificates, instruments, receipts, petitions, motions or other papers or documents to which the Company is or will be a party, including, but not limited to, any security and security agreement or guaranty agreement (collectively with the Cash Collateral Order, the ***Cash Collateral Documents***), incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof submitted to the Company, with such changes, additions, and modifications thereto as any Authorized Signatory executing the same shall approve, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

k.  the Company, as debtor and debtor-in-possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations and certain obligations related to the Cash Collateral and to undertake any and all related transactions on substantially the same terms as contemplated under the Cash Collateral Documents (collectively, the ***Cash Collateral Transactions***), including granting liens on its assets to secure such obligations;

l.  any Authorized Signatory be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, the Company to file or to authorise the agents to file any Uniform Commercial Code (the ***UCC***) financing statements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name the Company that the agents deem necessary or appropriate to perfect any lien or security interest granted under the Cash Collateral Documents, including any such UCC financing statement containing a generic description of collateral, such as "all assets", "all property now or hereafter acquired" and

other similar descriptions of like import, and to execute and deliver, and to record or authorise the recording of, such mortgages and deeds of trust in respect of real property of the Company and such other filings in respect of intellectual and other property of the Company, in each case as the agents may reasonably request to perfect the security interests under the Cash Collateral Documents;

m.  that any Authorized Signatory be, and hereby is, authorized and directed, and each of them acting alone hereby is, authorized, directed, and empowered in the name of, and on behalf of, the Company, as a debtor and debtor in possession, to take such actions as in their discretion is determined to be necessary, desirable, or appropriate and execute the Cash Collateral Transactions, including delivery of:

    i.  the Cash Collateral Documents;

    ii.  such other instruments, certificates, notices, assignments, and documents as may be reasonably requested by the agents; and

    iii.  such forms of deposit, account control agreements, officer's certificates, and compliance certificates as may be required by the Cash Collateral Documents;

n.  that any Authorized Signatory be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, the Company to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the Cash Collateral Transactions and all fees and expenses incurred by or on behalf of the Company in connection with the foregoing resolutions, in accordance with the terms of the Cash Collateral Documents, which shall in their sole judgment be necessary, desirable, proper, or advisable to perform any of the Company's obligations under or in connection with the Cash Collateral Order or any of the other Cash Collateral Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions;

*Exit Financing*

o.  that the execution, delivery and performance of the Exit Finance Documents (and the incurrence of the obligations thereunder) by the Company in the form substantially consistent with the Exit Facilities Commitment Letter and/or the RSA previously submitted to the Directors, and the consummation of the transactions contemplated thereunder, including:

    i.  the execution, delivery and performance of all other agreements, instruments, documents, notices, or certificates constituting exhibits to or that may be required, necessary, appropriate, desirable, or advisable to be executed and delivered pursuant to the Exit Finance Documents or otherwise permitted thereunder or related thereto, including interest rate, currency, or commodity hedging arrangements (each, an *Additional Credit Document* and collectively, the *Additional Credit Documents*);

    ii.  any granting of security interests (including security interests with respect to all or substantially all of its assets, (including any renewals,

increases,  extension  for  any  period  of  rearrangement  thereof))  and/or guarantees  in  relation  thereto;  and

iii.  the  making  of  representations  and  compliance  with  the  covenants thereunder  and  the  assumption  of  any  obligations  under  and  in  respect of  any  of  the  foregoing,  are  hereby  authorized  and  approved,

p.  and  that  any  Authorized  Signatory,  each  of  them  acting  alone  or  with  one  or more  Authorized  Signatory,  with  power  of  delegation,  be,  and  each  of  them hereby  is,  severally  authorized,  empowered,  and  directed  in  the  name  of,  and  on behalf  of  the  Company  to  execute  and  deliver  each  Exit  Finance  Document  to which  the  Company  is  a  party,  with  such  changes  therein  and  additions  thereto as  any  such  Authorized  Signatory,  in  his  or  her  sole  discretion,  may  deem necessary,  convenient,  appropriate,  advisable,  or  desirable,  the  execution  and delivery  of  such  Exit  Finance  Documents  and  with  any  changes  thereto  by  any such  Authorized  Signatory,  to  be  conclusive  evidence  that  such  Authorized Signatory  deemed  such  changes  to  meet  such  standard;

q.  that,  as  used  herein,  the  term  *Additional  Credit  Documents*  shall  include,  but not  be  limited  to  any  intercreditor  agreements  and  all  other  documents, certificates,  or  agreements  necessary,  proper,  or  advisable  to  consummate  the transactions  contemplated  by  the  Exit  Finance  Documents,  including,  without limitation,  any  note,  fee  letter,  guarantee  agreement,  security  agreement, mortgage,  pledge,  intellectual  property  security  interest  agreement,  intellectual property  security  agreement,  or  other  documentation  similar  to  any  of  the foregoing;

r.  that  any  Authorized  Signatory,  each  of  them  acting  alone  or  with  one  or  more Authorized  Signatory,  with  power  of  delegation,  be,  and  each  of  them  hereby is,  severally  authorized  in  the  name  of,  and  on  behalf  of  the  Company  to  take  all actions  including,  without  limitation,  (A)  the  negotiation,  execution,  delivery, and  filing  of  any  agreements,  certificates,  instruments,  or  documents  (including mortgages,  financing  statements,  and  similar  documents),  (B)  the  modification, restatement,  or  amendment  of  any  of  the  terms  and  conditions  of  any  Exit Finance  Documents,  (C)  the  payment  of  any  consideration,  and  (D)  the  payment of  indemnitees,  fees,  costs,  expenses,  and  taxes  as  any  such  Authorized Signatory,  in  his  or  her  sole  discretion,  may  deem  necessary,  appropriate,  or advisable  (such  acts  to  be  conclusive  evidence  that  such  Authorized  Signatory deemed  the  same  to  meet  such  standard)  in  order  to  effect  the  transactions contemplated  under  any  Exit  Finance  Documents;

s.  that  each  Authorized  Signatory  be,  and  hereby  is,  authorised  and  empowered  to take  all  actions  or  to  not  take  any  action  in  the  name  of  the  Company  with respect  to  the  transactions  contemplated  by  these  resolutions  as  the  sole shareholder,  partner,  general  partner,  sole  member,  sole  manager,  member, manager,  general  manager  or  managing  member  of  each  direct  or  indirect subsidiary  of  the  Company,  if  any,  whether  existing  now  or  in  the  future,  in  each case,  as  such  Authorized  Signatory  shall  deem  necessary  or  desirable  in  the reasonable  business  judgment  of  such  Authorized  Signatory,  including  without limitation  the  authorization  of  resolutions  and  agreements  necessary  to authorize  the  execution,  delivery  and  performance  pursuant  to  the  Exit Financing  Documents  (including  certificates,  affidavits,  financing  statements,

notices, reaffirmations and amendments and restatements thereof or relating thereto) as may be necessary or convenient to effectuate the purposes of the transactions contemplated herein;

t.    that the agents under the Exit Finance Documents are authorized to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral (as defined in the Exit Facilities Credit Agreement) without the signature of the Company in such form and substance and in such offices as such agent determines appropriate to continue to perfect the security interests of such agent for the benefit of the lenders under the Exit Facilities and Exit Finance Documents, as appropriate. Any such agent is authorized to use the collateral description "all or substantially all personal property assets of the Debtor, whether now existing or hereafter arising" or any similar description in any such financing statements;

*Designation of Unrestricted Subsidiaries*

u.    that each Authorized Signatory be, and hereby is, authorised and empowered to in the name of, and on behalf of, the Company, enter into a supplemental indenture to amend the indenture dated August 21, 2020 in relation to the New Secured Notes (the ***New Secured Notes Indenture***) to, among other things, designated certain subsidiaries of the Company listed therein as "Unrestricted Subsidiaries" under the New Secured Notes Indenture, such designation to be effected as set forth in the Plan in connection with the consummation of the steps set out in the Plan;

v.    that each Authorized Signatory be, and hereby is, authorised and empowered to in the name of, and on behalf of, the Company, enter into a supplemental indenture to amend the indenture dated August 21, 2020 in relation to the New Third Lien Notes (the ***New Third Lien Notes Indenture***) to, among other things, designated certain subsidiaries of the Company listed therein as "Unrestricted Subsidiaries" under the New Third Lien Notes Indenture, such designation to be effected as set forth in the Plan in connection with the consummation of the steps set out in the Plan;

*Retention of Professionals*

w.    any Authorized Signatory be, and hereby is:

i.    authorized and directed to employ the law firm of Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, ***Kirkland***) as general bankruptcy counsel to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Kirkland;

ii.    authorized and directed to employ the law firm of Jackson Walker LLP (***Jackson Walker***) as local bankruptcy counsel to represent and assist the

Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Jackson Walker;

iii.   authorized and directed to employ the firm AlixPartners, LLP (*Alix*), as financial advisors to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Alix;

iv.   authorized and directed to employ the firm Houlihan Lokey Capital, Inc. (*Houlihan*), as investment bankers to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Houlihan;

v.   authorized and directed to employ the firm of Prime Clerk LLC (*Prime Clerk*) as notice and claims agent to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain the services of Prime Clerk;

vi.   authorized and directed to employ the law firm of Shearman & Sterling LLP (*Shearman*) as corporate counsel to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Shearman;

vii.   authorized and directed to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code, and in connection therewith, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate

application for authority to retain the services of any other professionals as necessary; and

viii.    authorized and directed to pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof submitted to the Company, with such changes, additions, and modifications thereto as such Authorized Signatory executing the same shall approve, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

*General*

x.    subject to the specific limitations set forth in paragraph (a) above, the Company be, and it hereby is, authorized, empowered and directed, and (i) each officer of the Company, including without limitation, the chief executive officer, the president, the chief financial officer, the chief operating officer, any vice president, treasurer, chief operating officer, chief restructuring officer, assistant treasurer, secretary or assistant secretary of the Company and any other person designated by the Directors, and (ii) Michelle McKinney Frymire, Lauren Aste, William Courtney, Courtney Mattson and Anna Cope (each an *Authorized Officer* and collectively, the *Authorized Officers*) be, and each of them hereby severally are, authorized, empowered and directed, in the name and on behalf of the Company, to enter into, execute and deliver the foregoing and any other Transaction Documents to which it is a party and to perform all of the agreements and obligations and liabilities of the Company and its subsidiaries thereunder and to consummate the transactions contemplated thereby, and that each Authorized Officer be, and they hereby are, authorized, empowered and directed to take or cause to be taken the above actions and all such further actions and to execute and deliver or cause to be executed and delivered, in the name and on behalf of the Company, all such further agreements, documents, amendments, certificates, filings, and undertakings and to incur and pay all such costs, fees and expenses as in their judgment shall be necessary, appropriate or desirable to carry into effect the purposes and intent of the foregoing resolutions; and that each Authorized Officer be, and they hereby are, authorized, empowered and directed, in the name and on behalf of the Company, to attest to any such agreement or delivery thereof;

y.    the Authorized Officers be, and each of them hereby severally is, authorized, empowered and directed, for and behalf of the Company, to prepare such amendments, amendments and restatements, supplements, waivers or consents (each of which may be substantial or otherwise) under any agreements or documents, including, without limitation, those referred to herein, which amendments, amendments and restatements, supplements, waivers or consents to such agreements or documents may provide for modifications or relief under such agreements or documents, in the name and on behalf of the Company, and to incur all fees and expenses in connection therewith, and to enter into any fee letter evidencing such fees, as in any such Authorized Officer's judgment he or she may deem necessary, appropriate or advisable to carry out or fulfil the intent and purpose of the foregoing resolutions or otherwise; and that such Authorized Officers be, and each of them hereby is, authorized to execute and deliver, in

the name and on behalf of the Company, the amendments, amendments and restatements, supplements, waivers or consents (each of which may be substantial or otherwise) under such agreements or documents as such officer shall determine to be necessary or appropriate, in the forms negotiated by any such Authorized Officer;

z.  any person dealing with any Authorized Officer in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorized Officer and by any of their execution of any document or agreement as set forth herein, the same shall be a valid and binding obligation of the Company enforceable in accordance with its terms;

aa. the execution and delivery of any other documents and any other certificates, agreements and documents and the performance of any other actions necessary or desirable pursuant to or in connection with the Transaction Documents and the Restructuring Transactions are hereby approved;

bb. each Authorized Officer of the Company may, by a written power-of-attorney, authorize any other officer, employee, agent or counsel of the Company to take any and all actions and to execute and deliver any and all agreements, instruments, certificates and other documents referred to in this Consent in place of or on behalf of such Authorized Officer, with full power as if such Authorized Officer were taking such action himself or herself;

cc. the omission from this Consent of any agreement, document or other arrangement contemplated by any of the Transaction Documents or any of the agreements, documents or instruments described herein or any action to be taken in accordance with any requirement of any of the Transaction Documents or any of the agreements, documents or instruments described herein shall in no manner derogate from the authority of any Authorized Officer of the Company and, in each case, any person acting in behalf of or under the direction thereof, to take all actions necessary, advisable or appropriate to consummate, effectuate, carry out or further the transactions contemplated by, and the intent and purposes of, the foregoing resolutions; and

dd. any documents already executed, delivered or entered into by the Obligors' Agent or any officer or director on behalf of the Company in connection with the Restructuring Transactions at the date hereof are hereby ratified, and any and all actions previously taken by the Obligors' Agent or any officer or director of the Company prior to the date hereof in furtherance of the foregoing resolutions be, and they hereby are, ratified, confirmed and approved as the acts and deeds of the Company.

*     *     *     *     *